Chief Justice Robertson,
delivered the opinion of the court.
This is a suit in chancery, instituted in 1828, by the administrator of Sally Long against the defendants in error as administrators, heirs and distributees of John White, deceased, for a female slave, Hannah, and her children.
The allegations of the bill are, in substance, the following: that, in 1804, Reuben Daniel, of Spotsylvania county, Virginia, by deed, duly recorded in the clerk’s office of that county, sold and delivered, for £50, Hannah, then six years old, “to the sole and separate use” of Sally Long, the wife of John Durret Long (of said countyJaand not to the use of her husband;” with power to “dispose thereof by deed or will, notwithstanding her coverture;” that Long and wife having removed to Madison county,in this state, he, without her consent, sold Hannah to John White, who, before the sale, was notified by Mrs. Long of her right; that, nevertheless, White, immediately after the sale, which was in 1808, took possession of Hannah and kept her until his death, in 1823 or 4; that she and children which she had borne, were distributed among the heirs of White; that J.. D. Long died intestate, in 1827, and that his wife died also intestate, in 1828, about twelve months after the death of her husband.
The hill claims Hannah and her children, and hire for their use.
K ^ now sc-.teery that a feme covert iro* tyin theenjoyment of yise^toVer" bonafide, for her separate, interven tion of trust«os.
w*lcTe ProP’ voyedexpresslytothewife’s use, tiüe which by operation oflaw vests in the husband, he will Inequity fas a trustee lor the wife to the extent of her equitable ri£ht proper y.
The answers deny that Mrs. Long had any right to the slaves, or that if she ever had any right to-Hannah,1 John "White had notice of it before his purchase, which they allege to have been made, bona fide, for the consideration of §300; and among other grounds of defence, they urge the lapse of time.
Tire circuit court, on the hearing, dismissed the bill.
Although, according to the Common law, the personal properly in possession of the wife, upon her marriage, or which shall have come to her during marriage, vests absolutely in the husband, in consequence of the legal unity of husband and wife, yet modern adjudications in equity have established, to a limited extent, the doctrine of the civil law which recognizes the separate existence and proprietary rights of married women.
And now we consider it settled in the British chancery, that a feme covert may be protected in equity, in the enjoyment of property devised to her, bona fide, for her separate use, without the intervention of trustees. There is some contrariety in the anti-revolutionary cases on this subject; but the case oí Bennet vs. Davis, II Pr. Wm. 316, has been regarded as a leadingand controlling authority, in favor of the equitable right of a wife, to property thus conveyed to her separ rate use.. Without regarding subsequent and contraband cases in the British Reports, the doctrine in Ben-net vs. Davis, has been considered by most of the American courts,as authoritative and decisive of the equitable principle now uuder consideration.
The husband will be regarded, in equity, as a trustee for his wife, to the extent of her equitable right to property conveyed expressly to her separate use, but the legal right, to which, by operation of law, vests in him; Clancy on rights, 256-7; Mad. Chy, 376-7,11 Kent’s Com. 126,
ni it Although this doctrine has been applied generally, io devises, it has, more than once, been applied to all other modes of transfer, of a distinct and certain character; see II Atkins, 55S; Clancy, 261; and it applies to personal, as well as to real estate.
From analogy, it may he admitted, that a creditor ©v purchaser of the husband, with notice of the wife’s equity, might be chargeable as-her trustee.
fTno popifive witness, drcwmstances apuflioient'to>e ovcrruld (he denial in the of a'person ” who answers en his own lénowíciUc ° ’
But ibis, comparatively new, and constructive equity of married women, should never be enforced against opposing rights, unless it can be made out clearly and' satisfactorily. In the language of Lord Macclesfield, “as it (is) against common right, that the wife should have a separate property from the husband, (they being both in law, but as one person,) so all reasonable intendments and presumptions (should be) admitted against the wife.”
• In, this case, we are authorized to consider the ancestor of the defendants, as a purchaser for a valuable consideration.
It is true, that the hill of sale to him, being a matter inter alios, is not evidence against the plaintiff; and it is equally true, that there is no positive proof tha.t the price of $300, or any other particular sum, was paid, by White to Long.
But the hill itself, admits that there was a pecuniary consideration, and (lie lapse of time and other corroborating circumstances justify the inference, that a valuable consideration was paid. That is enough.
Bfe are also inclined to the opinion, that White had some notice before h.is purchase, that Mrs. Long claimed some, right to Hannah, Only one witness has sworn ^iat White had such notice; and the character of that witness has been assailed in such a manner, as to render bis credibility very questionable. Ilis testimon3' howc-s er, in some degree, fortified by slight corroborating circumstances. When there is no post-live witness, circumstances may alone he sufficient to overrule the denial in the answer even of a person who answers on his own personal knowledge; IX Cranch, 153-6.
But, notwithstanding this concession, we are of opinion, that the equity of the plaintiff has not been so clearly and satisfactorily established, as to entitle him to a decree against the defendants.
His claim is rendered extremely questionable, if not dearly invalid by many circumstances, of which, the following are the most prominent.
1st. It may be well doubled, whether or not, Hannah belonged to Daniel, when he attempted to sell her to Mrs. Long. She had [)e.en the property of the fa *229 íhe.r of Daniel and of Mrs. Long, who had devised bis whole estate to his wife daring her widowhood; although she (the wife) was alive and unmarried at the lime of a sale by Daniel as executor, Hannah and other slaves were sold by him. It seems probable, from the- evidence, that Daniel bought Hannah, and that Long bought another slave, named Mario; after the sale, Long had the possession of Maria, and Daniel ■was in possession of Hannah; but about the date of the bill of sale to Mrs. Long, her husband had posses*sion of Hannah, and Daniel had possession of Maria; Long was in doubtful, if not insolvent circumstances. The bill of sale contained beds and cows, as well as Hannah, but has, since its execution, been defaced by an erasure of the beds and cows. From these circumstances, it is far from being improbable, that Hannah was, in some way, exchanged for Maria, and that the object of the arrangement was not merely to secure, bona fide, to Mrs. Long, property to which she had any right, legal or equitable.
husband a’siavT^e may secure to bis. wife all e" toitbya conveyance to her separate therebWumself become,in equity, a tms fG€+
Jf Long owned .Hannah, he might have secured to .his wife an equitable right to her, by a conveyance to her separate use; whereby he might have become, in equity, a trustee. But of such a transaction he-tween husband and wife, extreme jealousy is entertained in equity; and Clancy says, that in such a case, “there must be considerable difficulty in establishing a gift to the wife, to her separate use, and fixing a trust on the husband.” This is true, especially, when there has been no transmutation of possession.
The transfer in this case may have been made indirectly and virtually by the husband. If so, there is an objection, “in limine,” which would, of itself, render the equity now claimed, extremely questionable, We are authorized to presume, that the cows and beds, at least, belonged to, and were in the possession of the husband ; because, although there has been an attempt to prove that Hannah belonged to Daniel, the record contains no evidence that he ever had any right to the cows and beds; and this fact tends, in no slight degree, to show the real nature of the whole transaction.
2d. The deed has been obliterated since its execution. This, if done by Mrs. Long, would invalidate the deed, as the deed was beneficial to her only, thp legal *230 presumption would be, that it was altered by her, and' for her benefit, unless her coverture should authorize countervailing presumptions. But in the most favorable view of the case, the erasure subjects the writing to- suspicion, at least; and we are not sure, that unexplained, it should not'destroy its effectiveness.
A feme covert, ference to her separate properly, is com-potent to act in all respects,. 8s ifshe jvere a eme so e.
in a court of covert may"6 in respect to hev separate' or be°sued "by her husband J or any other person.
3d. The time which elapsed from 1808, to the institution of this suit; about twenty years, must operate. formidably, if not conclusively, against the claim now asserted. If the bill of sale vested in Mrs. Long-any equity, distinct from the legal right of her husband, to the extent of such separate right, she must necessarily. be considered, in equity, as a feme sole; Clancy, 282, 356,258-0.
Hence-, “a- feme covert acting with respect to her • separate property, is competent to act in all respects,., as if she were a feme sole? Peacock vs. Monk, II Vesey, Sr. 190.
This must be understood with some qualifications,-. and especially, as confined to personal estate or the prQfj^s 0f real estate, both of which would vest in the husband.
“Separate property, makes a married woman so far sui juris, that an act by her, which, if the property3 were not separate, would he rescinded, would yet be established with reference to her separate estate;” Clancy, 356.
married woman, being thus capable in a court e<Juhy, of possessing property to her separate use, and of- disposing of it, that court will consider her to be SG, far a distinct person from her husband, as to suffer ^er ^)C sue<^ by him, or to sue him, or to be sued bj\ or to sue any other person, with respect to that property,” Ibid, 358. J
, It is said that, although property be conveyed to the separate use of a feme covert with special power to dispose of it by will or deed, nevertheless, without any other restriction, she would have power to dispose of it in other modes; Ibid, 294. In such case, she may aiienate personal property in ctny mode which she may adopt, and in which a person, sui juris, might part with such property; Ibid, 289; and Jacques vs. Episcopal church, 17; Johnson’s Reports. Chancellor Kent, and; some other jurists have questioned this doctrine. ilut,. *231 however questionable it may be, upon principle or authority, when applied to conveyances to trustees for the separate use of a feme covert, we are clear, that it is the true and proper doctrine in all cases, in which the legal title vests in the husband, by -Operation of law, and especially if he also retain the possession, and use of the property.
Chancellor generally adopts the limitation which bars the hgul remedy; but he will not do so invariably, nor ever, when the reason and policy of the statute of limitation do not appiy.
From the foregoing established principles, when applied to this casé, the following conclusions necessarily result.
1st. If Mrs. Long had an available separate interest in the slave, she might have asserted her right by suit against White or Long, or both, as soon as the sale and delivery were complete.
2d. She might have parted with her right, by assenting to the sale, either when it was made or afterwards.
Although the statute of limitations may apply to implied, when it could not apply to express trusts, we do not suppose that the claim in this case has been, or should be, barred by the statute.
Equity follows the law, and therefore, the chancellor, generally, adopts the limitation which would bar a ^ legal remedy; but he will not do so invariably, nor ever, when the reason and policy of the statute do not apply.
Now, although, in equity, Mi's. Long, as to her alleged separate right, was a feme sole, yet she could not have sued for her right, without the intervention of a prochein amie; and might possibly have been prevented from suing, by the influence or coercion of her husband; and, therefore, it would seem to be inconsistent with the principles and usages of equity, to apply the lapse of time as a peremptory and conclusive bar to her claim.
But time should operate persuasively, if not conclu•sively, on her claim for two reasons.
1st. The equity, if ever it existed, has become stale. It would be difficult now to enforce that equity, without doing, or incurring great peril of doing, irreparable injustice.
If Mrs. Long ever had an available equity, and had never waived it, still she subjected it to suspicion and disfavor, by failing to assert it in her lifetime; and its *232 claims to consideration, are still more affected by other events which have intervened; the suit was not brought until both Long and White, as well as Mrs. Long, had died; nor until Hannah had borne several -children which were reared by White, and have, been distributed among his children; Long died insolvent, so that White’s representatives could not now be indemnified; and no reason, whatever, except the coverture, has been assigned for such long delay. It has not even been irf timated, that she was restrained by her husband.
2d. An assent to the sale by her husband, or a subsequent sanction of it by Mrs. Long might be inferred. Their circumstances Were necessitous; if he appropriated the price of the slave to the use of his family, her administrator should not now complain, because she participated in the benefits resulting from the use of Hannah’s value; and there is no evidence to show that she complained of the sale, except on one occasion, shortly after it was made. It is scarcely probable, that she would have acquiesced patiently and so long, if her claim had been deemed good, and she did not mean to yield it. But when her husband died, she was left in still more extreme destitution, and was perfectly free to act 'according to her own volition. Even after this, however, she brought no suit, nor suggested, as far as \e. ar;e informed, any claim, although she survived her Üfi^bañd about one year, and resided in the neighbcsrhoo^hofjjlannah and her children.
' It,would not be unreasonable to infer, that her claim Wasii|ot considered meritorious, or had been surrendered by some act, or in some mode.
fe consequences resulting from time, when fortified, fhe.y are, by the other enumerated facts, create too much doubt, to justify auy decree in favor of the plaintiff. Such a claim as that, here asserted, should be made clear and free from reasonable doubt or suspicion, before it should be allowed to oven-each or disturb the legal title enjoyed, as that of the defendants has been, for more than twenty years in peace and security. If such an anomalous claim should, under all the circumstances of this case, prevail against the title of the defendants, principles must be established, which might occasion regret, that the simple doctrines of the common law had ever suffered innovation from the refine- *233 «neut or gallantry which distinguish the civil code in reference to the rights of married women.
Turner and Owsley, for plaintiff; Bréele and Caperkm* for defendants.
As between the wife and the husband or his in blood or representation, the modern doctrine should be maintained in 'a clear case. How far it should apply to a purchaser from the husband, may yet be deserving grave consideration; in this respect, the authorities are not perfectly satisfactory. But, at all events, the legal right should not be taken from the purchaser, unless the equity of the wife be free from suspicion or reasonable doubt. In any event, if he be a purchaser of properly, to which the husband had the legal right, and without full notice-of the wife’s equity, he should not be disturbed.
In this case, it is doubtful, whether Mrs. 'Long ever had an available equity; if she had, it is doubtful whether she has not sold or waived it. It is by no means certain, that White had notice of her equity, although we-have admitted, that it is most probable, he had been told that slie had some claim to HannahJ
And it is certain, that the defendants would'suffer ■great inconvenience, and loss, if the plaintiff should succceed against them. This view of the case, places it in the most imposing attitude for the plaintiff, in which it can be^exhibited. And thus ‘considering the chancellor should forbear. Other obje relief need not be stated;-and, therefore, decided whether or not a separate interest vf&s^Scured to Mrs. -Long by thebill of-sale, or could haw secured.
We have not deemed it necessary toinquiri sufficiency of the parties to the suit, nor-other1 ■not affecting the merits of the case.
Wherefore, this-court approves and affirms the decree of the circuit court.